**NATIONAL LABOR RELATIONS BOARD, on Relation of KOHLER CO., Applicant,**

v.

**John GUNACA, Respondent.**

No. 55–C–265.

United States District Court
E. D. Wisconsin.

Nov. 22, 1955.

Jos. I. Nachman, N. L. R. B., Washington, D. C., for N. L. R. B.

Jerome Powell & Wm. F. Howe, Washington, D. C., and Lyman C. Conger, Kohler, Wis., for Kohler Co.

D. Charles Marston, Detroit, Mich., for Gunaca.

Max Raskin, Milwaukee, Wis., amicus curiae.

GRUBB, District Judge.

This matter is before the Court on an order to show cause by the applicant why an order should not be entered requiring the respondent to obey a certain subpoena ad testificandum issued by the Board and served on the respondent.

The record shows that in connection with a proceedings before a National Labor Relations Board examiner on the question of an unfair labor practice the relator requested and the trial examiner of the Board issued a subpoena to the respondent which was duly served upon him calling upon him to attend a hearing before the trial examiner of the Board at Sheboygan, Wisconsin, on August 18, 1955. At the time of the return of the subpoena respondent appeared by an attorney (he stated he was making a special appearance), and filed a petition to revoke the subpoena. This was heard by the trial examiner who denied the petition to revoke the subpoena. In the proceedings before the examiner, and here, many contentions are urged.

The record discloses that the respondent is a resident of Detroit, Michigan. It further discloses that a warrant for the arrest of the respondent on a charge of a felonious assault was issued in Sheboygan County, Wisconsin; that request was made for the extradition of the respondent from the state of Michigan to answer that charge; that the Governor of Michigan has not granted extradition as of the time of the hearing in this matter, but that respondent did post bond with a state court in Michigan. The terms of this bond are not shown by the record, but it can only be assumed from the record that the bond is conditioned upon his appearance if extradition is granted. The respondent claims that he would be unable to get a fair trial if he were to come to Wisconsin to answer the charges.

The Court will take up the various contentions of the respondent which are as follows:

## I.

Respondent contends that the venue in this proceeding is incorrect and that it should have been brought in the District Court in Michigan. Title 29 U.S.C.A. § 161(1) provides that the Board or any member thereof shall, upon application of any party to proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or production of evidence.

> "Such attendance of witnesses * * * may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing."

Congress could not have used broader language with reference to the geography. Subsection (2) provides that in case of contumacy or refusal to obey a subpoena

> "* * * any district court of the United States * * * within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found * * * upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce the evidence if so ordered * * *."

The plain language of the statute gives to the Board the right to bring this proceedings in either the District Court within the jurisdiction of which the inquiry is being carried on or within which such person is found or resides. The city of Sheboygan is within the jurisdiction of the Eastern District of Wisconsin. Respondent has cited no decision nor has the Court been able to find one

holding that the quoted language means other than what it says.

## II.

■ Respondent contends that this Court has no jurisdiction over the person of the defendant. The provisions above quoted also seem on their face to answer that contention. Subsection (5) specifically provides:

"All process of any court to which application may be made under sections 151–166 of this title may be served in the judicial district wherein the defendant or other person required to be served resides or may be found."

That language is not susceptible of any holding that the process of the Court in this proceedings is confined to the Court's district. Again, no decision has been cited, or found by the Court, limiting such language.

"Congress may authorize the civil process of a federal district court to be served upon persons in any other district." Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 683, 55 S.Ct. 595, 609, 79 L.Ed. 1110.

## III.

■ The contention is made that even if process of this Court reached into Michigan, this Court could not punish a Michigan resident for contempt, in other words, could not enforce the process. Title 29 U.S.C.A. § 161(2) above quoted, in addition to giving the Court power to issue an order requiring such person to appear before the Board or its agent, expressly provides:

"* * * any failure to obey such order of the court may be punished by said court as a contempt thereof."

Here again is an express provision in the Act of Congress not susceptible in the Court's opinion to any interpretation other than just what it states. Counsel have cited no decisions to the contrary.

In N. L. R. B. v. Hearst, 9 Cir., 102 F. 2d 658, 662, the court said in answer to a contention that valid service could not be made outside the judicial district fixed by the Board in which the unfair labor practice occurred:

"The contention is based on an alleged lack of geographic reach. * * * the act specifically permits the Board to designate the place of hearing, § 10(b), which implies that service can be made anywhere in the United States. Since 'Congress may authorize the civil process of a federal district court to be served upon persons in any other district' * * *, it has power, we think, to authorize service by this act anywhere in the United States."

## IV.

■ Respondent contends that the Board itself must act on the issuance and revocation of a subpoena before the Court can enforce such subpoena. This claim is based upon the position that the Board cannot delegate its powers of issuance and revocation of subpoenas.

This contention presents a close question and one upon which there has been disagreement. Thus, in N. L. R. B. v. International Typographical Union, D.C., 76 F.Supp. 895, 898, when the matter was presented to District Judge Medina, he held that the power could be delegated. He placed great stress upon the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. His decision seems to this Court to be logical and reasonable. He points out that if the Act were to be interpreted otherwise and without reference to Section 7(b) of the Administrative Procedure Act,

"* * * the result might well be a most burdensome and unnecessary deluge of motions to revoke subpoenas and the Board, in many if not most cases, would find it impossible to determine such motions on the merits without procuring lengthy transcripts of proceedings before trial examiners, together with copies of voluminous documents

and exhibits. In the absence of clear language to that effect, it is not to be supposed that the Congress intended to involve the National Labor Relations Board in such a morass of procedural detail."

We next find the matter considered by the Seventh Circuit Court of Appeals in N. L. R. B. v. John S. Barnes Corp., 178 F.2d 156, 159. The court there stated, among other things:

"However, if we are to determine the intent of Congress, we must go further than an investigation of the language of the particular section of the Act. We must consider the Act as a whole, its various provisions, its purpose, what Congress expected the National Labor Relations Board to accomplish under the Act, and its legislative history.

"The mere fact that certain sections of this Act authorize the delegation of certain powers by the Board has not been generally construed as depriving the Board of the power to delegate certain other powers, the delegation of which is not expressly authorized.

\* \* \* \* \* \*

"By Section 5 of the Act, the Board was given the power 'by one or more of its members or by such agents or agencies as it may designate, (to) prosecute any inquiry necessary to its functions in any part of the United States.' The issuance of subpoenas is a necessary incident to the power to investigate and prosecute."

While it may not have been necessary to the decision of the case, the court thereafter said this with reference to the matter of revocation of subpoenas:

"If we were to adopt the restrictive construction of this section for which the respondents contend, we would necessarily be compelled to also hold that all such petitions must be submitted to the Board and must be acted on by not less than three members of the Board. This would necessarily require sending to the Board sufficient information concerning the matters under investigation to make it possible for the Board to intelligently pass upon such petition.

"If we were to hold that the Board, or one of its members, must personally do every act essential to the execution and issuance of each subpoena in every proceeding being conducted under this Act throughout the United States and its Territories, and that the Board must then, as a Board, pass upon every petition for the revocation of any subpoena, it would be physically impossible for the Board and its members to perform the many other more important duties which they are required to perform to accomplish the purpose of the Act."

Neither of the above decisions has been reversed or overruled so far as the Court has been able to ascertain.

There is one decision holding to the contrary, that of District Judge Hall in N. L. R. B. v. Pesante, D.C., 119 F.Supp. 444. In this case Judge Hall, mainly by an analysis of the statute and the amendments to it and without regard to the Administrative Procedure Act and without regard to the practical effect of such holding, decides directly contrary to the previous two cases. The reasoning of the International Typographical Union and the Barnes cases appeals to this Court more than that in the Pesante case. It would seem to this Court that one should be very slow to presume that the Congress intended to enact a statute which would require a review of testimony possibly two or three thousand miles from the place where testimony was taken after having it transcribed with all the attendant delays and expense in proceeding before the N. L. R. B. that would be involved. Such construction would make it impossible as a practical matter for the N. L. R. B. to carry out its functions. Certainly they couldn't carry them out expeditiously as Congress no doubt intended. Labor

peace or proper labor relations would be sacrificed to innumerable administrative delays. Labor unions most frequently seek redress before the Board because of unfair labor practices of employers. The Congress no doubt meant to afford them expeditious hearings and relief not to be delayed by such cumbersome and delaying procedure as would be necessary if the Board itself had to review all such rulings. Such construction would put an impossible burden upon the Board. The Court has been unable to find that the Pesante case has been reversed or overruled.

## V.

■ Respondent contends that the Court must determine whether or not defendant's testimony is material in the Sheboygan hearing. It was stated during the oral argument that the hearing had been going on for a considerable length of time. At one time it was stated that the matter was about to go into the fiftieth hearing and at that time covered about eight thousand pages of transcript. This statement of counsel is not evidence or before the Court in affidavit form. In testing whether it was intended that the Court determine whether the testimony would "relate to" or "touch on" any matter under investigation by the Board, the Court can consider that it is common knowledge that these hearings sometimes go on for weeks and even months with many, many witnesses and thousands of pages of testimony. The Board and its trial examiner have the advantage of having seen and heard the many witnesses and of having first hand knowledge of the issues and controversies.

■ This Court believes that had it been intended that the Court itself pass upon these criteria de novo, provision would have been made that a transcript of testimony at least be furnished to the Court together with such other parts of the record as to enable the Court to intelligently pass on that question. One would be loathe to assume that the Congress meant any such cumbersome procedure. The findings and orders of the Board are subject to judicial review in the Courts of Appeal. Any error could no doubt be reached in the regular process of review. To have the Court pass upon these criteria during the pendency of the hearing before the Board would be as illogical as it would be to have a trial court stop in the middle of a trial, have the record transcribed and sent to the appellate court to review a ruling on evidence or on a procedural question. In the absence of a clear and strong showing that the evidence does not meet the criteria, it is the opinion of the Court that it should not try to review that ruling, having no copy of the record. There should be no presumption of error in the ruling. There is no showing in this record in that respect such as to move the Court to substitute its judgment on that question for the judgment of the Board or its examiner who has seen and heard the witnesses and is thoroughly familiar with the record. As stated by the United States Supreme Court in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 343, 87 L.Ed. 424:

> "The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration. * * * The consequence of the action of the District Court was to disable the Secretary from rendering a complete decision on the alleged violation as Congress had directed her to do * * *. Congress sought to have the procurement officers advised by the experience and discretion of the Secretary rather than of the District Court. To perform her function she must draw inferences and make findings from the same conflicting materials that the District Court considered in anticipating and foreclosing her conclusions."

In Cudahy Packing Co. v. N. L. R. B., 10 Cir., 117 F.2d 692, 694, it is stated:

"When an application is filed with a District Court for an order requiring obedience to a subpoena it may inquire only to ascertain that a proceeding is pending before the Board of which it has jurisdiction and that the evidence sought relates to or touches the matter under investigation. If these facts are found to exist, it is the duty of the court to order obedience to the subpoena.

"The only defenses that a respondent may assert in such a proceeding are that the proceeding in which the evidence is sought is not one of which the Board has jurisdiction or that the evidence does not relate to or touch the matter under consideration. It may not in such a proceeding assert its defenses in the principal case."

## VI.

Defendant contends that the subpoena is oppressive and enforcement of it would create undue hardship for him upon the ground (a) that the defendant needs to be on his job and will be deprived of income, and (b) that the defendant would have to travel a long distance.

 With reference to ground (a) the record is silent as to what the respondent's employment is, what his income is from that employment, as to whether he is a key man in any organization whose absence would disrupt a plant and throw many people out of work, or cause an unusual hardship of any kind. This record merely is to the effect that the defendant has some kind of work, apparently in Detroit. Any time any witness is served with a subpoena and compelled to attend as a witness at a trial in court or a hearing before any administrative agency, federal or state, he must leave his job, and if his job pays more than the witness fee, be deprived of that much of his income. If such were a sound basis for suppressing or refusing to enforce a subpoena, no judicial or administrative proceedings of any kind could be had.

As to its being oppressive to require the defendant "to travel a long distance" it must again be remembered that the Congress in the provisions of this Act making the subpoena effective anywhere in the United States or any territory thereof used very plain language. Michigan is one of four states immediately contiguous to Wisconsin. The distance from Detroit, Michigan, to Sheboygan, Wisconsin, is indeed mild compared with the distances implied in the language of the Congress making the subpoena effective anywhere in the United States. If the subpoena were not to be effective in an adjoining state, the Congress used most inappropriate language. The Congress evidently felt that the functions of the Board were important enough so that its subpoenas are given much greater territorial validity than the subpoenas of the various District Courts in the ordinary proceedings before them. The Congress could have, but did not, provide that where witnesses resided more than a specified distance from the place of hearing they could not be compelled to attend but that a deposition be substituted for personal attendance.

## VII.

 Respondent claims that enforcement of the subpoena would be oppressive or unreasonable because he claims that he could not have a fair trial in Sheboygan.

Section 261.08 of the Wisconsin Statutes provides that a defendant may move to have another judge brought in to hear his case because of the prejudice of the sitting judge. That statute is extremely broad. Under the provisions of Section 261.08 of the Wisconsin Statutes, if the defendant files an affidavit that he has good reason to and does believe that he cannot have a fair trial on account of the prejudice of the judge, the judge becomes disqualified. There is not even the requirement that the party set forth in affidavit form the basis of his belief.

So far as any claim that a fair trial could not be had in Sheboygan County, Section 356.03 of the Wisconsin Statutes

provides that if a defendant who is charged with a felony files his affidavit that an impartial trial cannot be had in the county, the court may change the venue to an adjoining county. In addition to those safeguards, the history of the Supreme Court of the State of Wisconsin indicates that it has been very zealous in requiring that defendants charged with crimes have fair trials. Practically all courts in this country have now become exceedingly aware of the jealousy with which the United States Supreme Court requires that defendants' rights be protected and that defendants in criminal cases have fair trials. This Court does not believe, cannot assume and is not in a position to hold that the state courts would ignore defendant's right to a fair trial. There is nothing in the record to justify any such assumption. The trial examiner of the National Labor Relations Board has apparently been holding hearings in Sheboygan for some time. No doubt had he been aware of any prejudice that would be indicated by the record. If any of the parties had any concrete evidence one way or the other of any such community prejudice, no doubt it would have been put before the Court.

### VIII.

■■■■ Respondent contends that the enforcement of the subpoena would deny him his rights as a citizen of Michigan and interfere with the prerogatives of the Governor of Michigan. No authority is filed in support of these contentions. The respondent is presumed to be innocent of any crime of which he is charged and presumably if he stands trial will receive a fair trial and not be found guilty unless proven guilty beyond a reasonable doubt. We know of no authority in the Constitution or by any Act of Congress or by any law of the state of Michigan which provides that a citizen of Michigan, while in the state of Michigan, is immune from facing trial on a criminal charge in any other state in the union. On the contrary, Article IV, Section 2 of the Constitution reads as follows so far as is material here:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall, on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

The enforcement of a subpoena has nothing to do with the extradition proceedings. The Constitution does not guarantee any right of asylum to any person to avoid having to stand trial if regularly indicted or charged with a felony in another state.

■■■■ In Mahon v. Justice, 127 U.S. 700, 32 L.Ed. 283, a fugitive from Kentucky was illegally and forceably brought back from West Virginia into Kentucky. He claimed that his constitutional rights and the laws of the United States had been violated by his arrest and imprisonment in this manner. The court did not sustain that contention. There is nothing in the Act under consideration which would grant an exception to the power of subpoena on account of the fact that the witness is under indictment or charged with a crime in the state which the subpoena would require him to enter. One would be most loathe to believe that the Congress ever so intended. Such intention would be so contrary to the constitutional provision above stated that it should not be lightly indulged in. As stated in Downey v. Schmidt, D.C., 4 F.Supp. 1, 3:

"* * * the duty of the Governor, when a requisition is presented, is ministerial and not discretionary, and is described as imperative, although, in the absence of state statute, there is no power to compel the executive to act."

See also Commonwealth of Kentucky v. Dennison, 24 How. 66, 106–107, 16 L.Ed. 717.

### IX.

■■■■ The final contentions of the respondent are that he is a defendant in a criminal proceedings and is thus immune

from civil process, and that he is in the custody of the state of Michigan.

No authority has been cited to the effect that a defendant in a situation such as is presented by this case is immune from service of a Federal subpoena. The Court has been unable to find any.

In 24 Am.Jur., Process, § 138, the following language is found:

"* * * A person in custody on a criminal charge, whether before or after conviction, may be served with civil process."

Furthermore, it would seem that witnesses do not fall within the ordinary exemptions from civil process granted to parties.

"While many persons and classes of persons are at certain times privileged and exempted from service of civil process, these privileges and the exemption from process do not ordinarily extend to exempt such persons from being compelled to attend and testify as witnesses in a trial." 58 Am.Jur., Witnesses, § 15.

The last part of this contention is that the respondent is in the custody of the state of Michigan. No authority has been cited for the proposition that the fact that he has put up bond, no copy of which and the exact terms of which are not set forth in the record, for his appearance in Michigan in a Michigan court to answer the extradition proceedings to extradite him to Wisconsin makes him immune from the service of a subpoena or takes him out of the application of the Labor Relations Act. There is nothing in the Act to make an exception excepting such a person from service of subpoenas. One can only assume from this record that the sole purpose of the bond in Michigan is that he will respond to the extradition proceedings if extradited. If he comes into the state of Wisconsin and is served with a criminal process here, the extradition proceedings would become moot. Its only object can be to try and compel his coming into Wisconsin to stand trial for whatever offense he is charged with if extradited. Nothing in the Act provides that the Governor of any state or the state court of any state can give any citizen of any state immunity from the lawful service of a subpoena by a body having the right under the laws of Congress to subpoena such a person as a witness. The Court requested all counsel to furnish authority on this contention. No authority has been found supporting such contention. None has been found by the Court. Respondent's counsel cited some decisions, none of which support this contention in the Court's opinion.

Counsel for the National Labor Relations Board is directed to prepare a proposed order in accord with this decision, sending copies of the proposed order to counsel for the other parties. Such counsel will have three days in which to file any objection they may have as to the form of the proposed order.